785 So.2d 623 (2001)
Lorenzo SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-892.
District Court of Appeal of Florida, Fifth District.
April 27, 2001.
Rehearing Denied May 30, 2001.
*624 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, C.J.
Lorenzo Smith appeals his judgment and sentence. We reverse in part and affirm in part.
Smith was charged by amended information with armed burglary of a dwelling with a firearm, robbery with a firearm, false imprisonment, grand theft third degree, and possession of a firearm by a convicted felon. The state filed its notice of intention to seek habitual felony offender or habitual violent offender sanctions, nolle prossed count four, and the case proceeded to trial.
The first witness for the state was one of two victims in this case, Michelle Loughlin. She testified that she was visiting the Orlando area on vacation with her boyfriend, Edward Ponzio, the week of July 12, 1999. On that date, she returned to her motel room after retrieving some towels, and a man followed her into the room. She told him he must have the wrong room, and in response he shook his head indicating "no" and pulled out what she thought was a gun. The man pointed it at Loughlin and Ponzio and told them to lie on the bed, face-down. Ponzio did as instructed but because Loughlin was too scared to look away from the gun, she knelt down on the floor at the foot of the bed and put her hands on the bed. From her vantage point, she was able to see the 6'0 6'2, 200 pound black man's face for half the five to ten minutes he was in the room with them.
Loughlin testified that Smith went through their bags and clothes and the rest of the motel room, demanding all their jewelry, money and drugs. Smith then ordered Ponzio and Loughlin into the bathroom, during which time Smith apparently continued to search their room and belongings for money and valuables. Smith then turned the television on at a high volume; after several minutes Loughlin and Ponzio felt confident he had left so they opened the bathroom door and emerged. Smith was gone. Loughlin testified *625 that several items were missing from the room after Smith left: close to one thousand dollars in cash, Disney passes, and jewelry he had removed from the two of them.
Ponzio called the police, who arrived at the motel room and took statements from them. The two victims then were taken to the police station, where they assisted in putting together a composite picture of the suspect, and looked through a binder full of photographs. Loughlin did not recognize any of the men in the photographs to be the perpetrator.
Two days later, an officer brought them a photographic lineup which included a photograph of Smith.[1] Loughlin looked at the lineup of six photographs and identified the photograph of Smith; she had no doubt that the man in the photograph (Smith) had committed the crime. She explained that she would not have picked any face if she had not recognized any of them.
Several police officers testified, as well as Ponzio, the other victim. The state presented evidence that Smith had been convicted of a felony and then rested. Defense counsel did not move for a judgment of acquittal because he believed it would be a "waste of ... time." The jury returned a verdict of: on count one, guilty of the lesser-included offense of burglary of a dwelling, with a special finding that Smith did not actually possess a firearm; on count two, guilty of the lesser included offense of robbery with a weapon, with a special finding that Smith did not actually possess a firearm; on count three, guilty of false imprisonment with a special finding that Smith actually carried, displayed used, or threatened to use or attempted to use a weapon or firearm; on count four, not guilty of possession of a firearm by a felon. Smith was adjudicated guilty of the appropriate offenses and sentenced accordingly as a habitual felony offender.
The first issue Smith raises concerns whether false imprisonment, a "confinement crime," can be a conviction separate from the robbery conviction on these facts. Smith argues that because the confinement of the victims was incidental to and inherent in the robbery, the conviction on false imprisonment cannot be sustained. Compare Formor v. State, 676 So.2d 1013 (Fla. 5th DCA 1996)(holding that kidnapping conviction cannot be sustained where the kidnapping was incidental to the crime of robbery, for which the defendant was also convicted). No objection was raised below making this argument, thus Smith argues this issue was fundamental error.
In Formor, the defendant was convicted of six counts of robbery and six counts of kidnapping. The facts of Formor were similar to the facts of the instant case:
Two black men wearing ski masks, and carrying either one or two sawed-off shotguns, entered a total of three unlocked guest rooms at the Ramada Inn and the Quality Inn. They ordered the victims at gunpoint to get on the floor or be killed. After robbing the victims, the men ordered them into the bathroom of each motel room, and told them not to come out or they might be killed. The victims stayed in the bathrooms while the robbers went through their luggage and valuables.
Formor, 676 So.2d at 1014. The kidnapping charges arose because the defendants ordered the victims into the bathroom. This court held that the kidnapping convictions *626 had to be reversed because "[t]he limited movement and confinement of the victims within the bathrooms was minimal, insignificant and merely incidental to the crime of robbery." Formor, 676 So.2d at 1015 (citing Berry v. State, 668 So.2d 967, 969 (Fla.1996)(holding that there can be no kidnapping where confinement is that which naturally accompanies felony, and, kidnapping conviction may not stand where defendant confines victim by moving victim to different room in apartment, closes door, and orders victim not to come out)).
In reaching that conclusion, this court relied on Faison v. State, 426 So.2d 963 (Fla.1983), where the Florida Supreme Court set out the three-prong test to determine if the acts of the defendant are incidental to a primary charge, or constitute the separate crime of kidnapping. Formor, 676 So.2d at 1015. If the confinement is incidental to the primary charge, then the kidnapping charge cannot be sustained. Although the state argues that Faison, which involved a kidnapping charge, should not be applied to cases involving false imprisonment charges, this court has previously done so. See Keller v. State, 586 So.2d 1258, 1261-62 (Fla. 5th DCA 1991)(reversing convictions for false imprisonment where false imprisonment was incidental to sexual battery); but see Chaeld v. State, 599 So.2d 1362 (Fla. 1st DCA 1992)(refusing to apply Faison to false imprisonment charge). Therefore, there is no real legal difference between the convictions in Formor, robbery and kidnapping, and the convictions in the instant case, robbery and false imprisonment. See also Rohan v. State, 696 So.2d 901 (Fla. 4th DCA 1997). Although Smith did not object below to this error, the error is fundamental. See Griffin v. State, 705 So.2d 572, 574 (Fla. 4th DCA 1998)("A conviction is fundamentally erroneous when the facts affirmatively proven by the State simply do not constitute the charged offense as a matter of law").
Smith's second argument also attacks his false imprisonment conviction and is moot in light of our decision on the first point. His last complaint concerns his sentencing. The state points out that Smith's failure to object below and failure to raise his sentencing complaint with a Florida Rule of Criminal Procedure 3.800(b) motion waived this point for purposes of direct appeal. The state is correct. See Malone v. State, 777 So.2d 449 (Fla. 5th DCA 2001); see also Fla. R.App. P. 9.140(d) ("[a] sentencing error may not be raised on appeal unless the alleged error has first been brought to the attention of the lower tribunal: (1) at the time of sentencing; or (2) by motion pursuant to Florida Rule of Criminal Procedure 3.800(b)").
The conviction for false imprisonment is reversed; otherwise, the judgment, conviction and sentence are affirmed. We remand the case for proceedings consistent with this opinion.
REVERSED IN PART; AFFIRMED IN PART: REMANDED.
COBB and PLEUS, JJ., concur.
NOTES
[1] Although this was not revealed at trial, the record indicates that Smith had been arrested for a similar crime at another motel that day.