JjDREW, J.
Monjunis[1] appeals a judgment overruling its declinatory exception of improper venue. Monjunis asserts that a forum selection clause in an unexecuted licensing agreement limits Johnson’s venue choices in this matter.
We affirm the judgment.

FACTS

In 1994, Johnny Johnson commenced discussions with Monjunis about the possibility of licensing a Monjuni’s restaurant in Monroe that was to'be owned and operated by Johnson. On September 27, 1995, the parties executed an option contract giving Johnson the right to enter a licensing or franchise agreement for such a restaurant. The option was for a period of one year, with a six-month extension permitted. Attached to the option was a licensing agreement; the option stated that the licensing agreement to be executed would include “in substance” the provisions contained in the attached agreement.
Johnson eventually purchased property in Monroe to be used as the site of the restaurant. On September 9, 1996, Johnson exercised his right to extend the original term of the option for six months. In March 1997, Johnson notified Monjunis that he intended to exercise his option. Because Monjunis was in the process of drafting a Uniform Offering Circular and Franchise Agreement, Johnson granted them additional time to do this. In April 1997, Monjunis forwarded to Johnson the necessary documents in order to execute his option. A meeting was scheduled for April 11, 1997 to 1 ¡.complete the required documents; however, on that date, Mon-junis refused to accept the tender of Johnson’s licensing fee and refused to execute the licensing agreement and other documents.
A petition for damages was filed against Monjunis on October 24, 2000 in Ouachita Parish. Johnson alleged that Monjunis breached its obligations as set forth in the option contract. Among the damages sought by Johnson were lost profits.
Monjunis filed the dilatory exception of prematurity and the declinatory exception of improper venue. Monjunis alleged that the petition for damages was premature because pursuant to the licensing agreement attached to the option, the parties agreed to mediate in Shreveport “any claim, controversy or dispute arising out of or relating to this [licensing] agreement or the relationship created by this [licensing] agreement ...” Monjunis also argued that venue was improper in Ouachita Parish because the agreement further provided that “[v]enue for any legal proceeding relating to or arising out of this agreement or the relationship created by this agreement shall exist exclusively” in the U.S. District Court in Shreveport or the First Judicial District Court. The trial court overruled the exceptions.

DISCUSSION

Monjunis argues on appeal that the trial court erred in overruling its exception of improper venue and contends that this matter can be adjudicated only in Caddo Parish pursuant to the terms of the licensing agreement. The clause in the licensing agreement that is at issue states:
LICENSEE hereby agrees and consents that any claim, controversy or dispute arising out of or relating to this *494 agreement or the relationship created by this agreement hshall be governed by Louisiana law and shall be submitted for mediation in Shreveport, Louisiana, with the mediator to be chosen by mutual consent of MONJUNIS, L.L.C. and LICENSEE or, in the absence of mutual consent, by the Magistrate-Judge of the United States District Court for the Western District of Louisiana. With respect to claims, controversies or disputes which are not finally resolved through mediation, LICENSEE hereby irrevocably submits itself to the jurisdiction of the United States District Court for the Western District of Louisiana, Shreveport, Louisiana or the First Judicial District Court in Caddo Parish, Louisiana. Venue for any legal proceeding relating to or arising out of this agreement or the relationship created by this agreement shall exist exclusively in these courts. LICENSEE hereby waives all objections to personal jurisdiction and venue.
Johnson counters that venue is proper in Ouachita Parish under La. C.C.P. art. 76.1 (Action on contract).
We note from the outset that the licensing agreement was never executed by the parties. While it was attached to the option as an indication of the terms to be included if an actual licensing agreement was ever executed, it was not part of the option. Monjunis cannot now argue that Johnson’s venue choices in this suit for breach of the option are somehow governed or limited by a venue selection clause in the unexecuted agreement. Ironically, it is Monjunis’ alleged failure to execute the licensing agreement as required by the option that is the focus of this suit.
We also disagree with Monjunis’ contention that the forum selection clause applies in this matter because it alleges Johnson is seeking recovery under the terms of the licensing agreement. In support of its assertion, Monjunis cites a provision from the petition that states:
Defendant is also liable to Plaintiff for all losses sustained by Plaintiff and for all profits of which Plaintiff has been deprived arising from Defendant’s failure and/or refusal to ^perform its contractual obligations, all in accordance with articles 1994, 1995 and 1996 of the Louisiana Civil Code.
While presuming that Johnson is referring to the licensing agreement, Monjunis ignores that the option itself is likewise a contract. An option to buy is a contract whereby a party gives to another the right to accept an offer to sell a thing within a stipulated time. La. C.C. art. 2620, The acceptance of an offer contained in an option is effective when received by the grantor; upon such an acceptance, the parties are bound by a contract to sell. La. C.C. art. 2621. “[Acceptance by the grantee of the offer contained in an option turns the option into a contract to sell, regardless of whether the object of the option involves movables or immovables.” Comment (b) to article 2621. A contract to sell gives either party the right to demand specific performance. La. C.C. art. 2623. See also La. C.C. art. 1986, which permits the granting of specific performance and damages when an obligor fails to perform an obligation to execute an instrument.
Even if we were to assume that Johnson will be entitled to damages for Monjunis’ alleged breach, it is still purely speculative whether or not the licensing agreement will be utilized to determine the amount of damages. At this stage of this litigation, all that is apparent is that Johnson is seeking damages for breach of the option, not for the breach of a licensing agreement that was never executed. We are mindful *495 that Monjunis will not be liable for any damages, however measured, until Johnson first proves that Monjunis breached the option contract.
La. C.C.P. art. 76.1 states that “[a]n action on a contract may be brought in the parish where the contract was executed or the parish where |Bany work or service was performed or was to be performed under the terms of the contract.” In the event a contract is executed in more than one parish, Article 76.1 authorizes venue in any of the parishes where the contract was executed. Antin-Quealy, Inc. v. WTA Marine, Inc., 99-0952 (La.6/4/99), 785 So.2d 623; Jordan v. Central Louisiana Electric Co., Inc., 95-1270 (La.6/23/95), 656 So.2d 988. Johnson executed the option in Ouachita Parish and transmitted it to Shreveport for the signature of Monjunis’ representative. In addition, the option required Johnson, upon exercising his option, to commence operations at the restaurant in Monroe within a specified period. Accordingly, venue is proper in Ouachita Parish and the trial court correctly denied the declinatory exception of improper venue. Monjunis does not appeal that part of the judgment denying the dilatory exception of prematurity.

DECREE

At Monjunis’ cost, the judgment is AFFIRMED.

. In both the option and (he licensing agreement, defendant is spelled "Monjunis, L.L.C.” However, “Monjuni’s” is used in the restaurant name.